UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>ROBERT J. TODOROWSKI,<br><br>    Debtor.<br>_____<br>HENRY MANNING DBA SEANMARK DEVELOPMENT.<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT J. TODOROWSKI,<br><br>    Defendant.<br>_____ | Chapter 7 Proceedings<br><br>Case No. 2:07-bk-00342-PHX-CGC<br>Adversary 2:07-ap-00312<br><br>UNDER ADVISEMENT DECISION RE: PLAINTIFF'S MOTION TO DISCHARGE DEBTOR'S CLAIM AND DEFENDANT'S MOTION AS A MATTER OF LAW |

I.  **Introduction**

Plaintiff Henry Manning, dba seanmark development (seanmark), has filed a Complaint objecting to the discharge of the debt Debtor/Defendant Robert J. Todorowski owes to Plaintiff. In the Complaint, Plaintiff requests a judgment against Defendant on counts I, II, and III, claiming Mr. Todorowski's debts are nondischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6). According to Plaintiff, Defendant committed fraud in filing the related Chapter 7 bankruptcy simply to avoid his financial commitment to seanmark.

Defendant filed a Motion to Dismiss the Complaint claiming Plaintiff may not represent seanmark *pro se*. The Motion to Dismiss was denied by the Court on July 11, 2007. Defendant filed an Answer on July 20, 2007. On November 27, 2007, a trial was conducted and closing argument was heard by the Court. Upon conclusion of the trial, Defendant moved for judgment as a matter of law. The Court directed Defendant to file a written motion for directed verdict by December 4, 2007, and instructed Plaintiff to respond by December 18, 2007. A Motion for Judgment as a Matter of Law was filed with the Court on December 4, 2007, and a Response in Objection to Defendant's Motion for Judgment was filed on December 18, 2007.

## II. Factual Background

Defendant was a sole proprietor of Zeke's Newmeyer's Café, aka Zeke's Café, for the nine years prior to September 15, 2005, when he became co-owner, holding 51% ownership as the managing member of R & D Restaurant Group LLC (R & D). In August 2006, Defendant became partner and co-owner of Zeke's Bar and Grill. Although Defendant's ownership changed from sole proprietorship to co-owner, managing member, to partner and co-owner, the business location for the bar and grill remained the same as the café at 19401 North Cave Creek Road, a strip mall location in north Phoenix, Arizona.

Plaintiff asserts that he is a general contractor dealing mostly in residential projects but also oversees problem projects in the commercial area. Plaintiff also asserts that he became acquainted with Defendant through Defendant's wife and met with Defendant and co-owner of R & D, Derek Smith, to offer free advice about their pending tenant improvement project of Zeke's Bar and Grill. Plaintiff further asserts that Defendant and Mr. Smith were seeking help from Plaintiff because they were having problems with the general contractor, Torres Building Concepts, in completing tenant improvement work for the bar and grill on time. Subsequent to the meeting Plaintiff entered into a contract with R & D around the first of May 2006. Plaintiff claims that he was led to believe by both Defendant and Derek Smith that there was at least $75,000 available to spend on the project and that Mr. Smith had the ability to infuse more money into the project as needed.

Subsequently on May 9, 2006, co-owner, Derek Smith, withdrew $30,000 from the R & D business account in anticipation of relinquishing his 49% ownership in the business. On the same day Defendant issued a check to seanmark for $30,000, which was payment for work that seanmark was about to complete, including tenant improvements that had been done and contracted for by seanmark. Plaintiff also asserts that a total of $165,700 was owed to seanmark, including $5000.00 for consulting services by Plaintiff. On about May 15, 2006, when an action plan was entered into with Plaintiff and Defendant to set forth how suppliers would be paid for the tenant improvement work, Plaintiff claims he became a finance manager of the project and brought in Mark Mayes, a friend of Plaintiff's, to assist with the financing of the project. Plaintiff claims that

construction on the bar and grill was completed with the help of Mark Mayes' $75,000 investment in restaurant equipment. Plaintiff also asserts that Mr. Mayes invested more money in the project, at least $200,000, for which Mr. Mayes now has sued seanmark.

An agreement then was entered into with Defendant, Hair Brain Ideas, LLC (an entity created by Plaintiff specifically for the project), and other individuals that provided for all different aspects of the business. (Plaintiff's Ex. No. 12.) The bar and grill opened in August 2006, operated in the negative for first few months but was floated with monies provided by Plaintiff and Mr. Mayes. Although Defendant originally was involved in the operation of business, at the end of October 2006, Plaintiff encouraged Defendant to assist more in an ownership role, work for free, and not rely on business for income. Also at the end of October 2006, Defendant indicated to Plaintiff that he wanted to seek other investors to buy out Plaintiff and Mr. Mayes but failed to present any interested investors to Plaintiff.

Plaintiff consulted PBS Global in January 2007, a national broker for business, who conducted a business evaluation and found the business was worth $410,000. Plaintiff did not inform Defendant that PBS had been contacted. PBS Global had an unsolicited buyer with funds available. Nonetheless, because of the bankruptcy the landlord changed the locks on the doors and would not allow Plaintiff access to the business prohibiting Plaintiff's ability to complete a sale of the bar and grill.

### III. Analysis

#### A. Plaintiff's Claim

In Plaintiff's Complaint, he asserts that seanmark has incurred expenditures of $350,000, as a result of the contract entered into with R & D. (Compl. at 9.) Plaintiff asserts that he, as sole proprietor of seanmark, has incurred $180,000 in expenditures. Plaintiff further asserts that he is responsible for a loan to seanmark by Mark Mayes for $200,000, and sets forth a total claim against Defendant of $350,000. In Schedule F of Defendant's Summary of Schedules, Defendant identifies a business debt with seanmark totaling $165,780.00. He also lists two other business debts of an unknown amount with Henry Manning and Hair Brain Ideas LLC.

In keeping with the Court's finding at the July 10, 2007, hearing, the claims asserted in the

adversary complaint are limited to debts owed to Henry Manning, dba seanmark development, sole proprietorship for tenant improvements at 19401 N. Cave Creek Road, Suites 15 and 16. In Exhibit No. 7, although the copy of the contract is not signed and dated by a representative for seanmark, the contract provides only for a total cost of $165,780.00 for seanmark's services.

At the closing argument, the Court inquired whether Plaintiff could produce a document that discusses the nature of the advances made by seanmark for the benefit of the overall project, including to whom the advances were made, how they were going to be paid back, are the advances secured, what are they secured with, who is the borrower, and who is the lender. Although Plaintiff was not able to locate a document in response to the Court's inquiry, the Court directed Plaintiff to Ex. 17 asking what the statement meant. Plaintiff responded that the statement was used to determine the true value of the business. The Court inquired whether the document was relevant to the trial and whether it related to what was owed to seanmark. Plaintiff responded that it reflects what is owed to seanmark including Plaintiff's loan from Mark Mayes. Plaintiff further stated that separate from the loan he incurred with Mark Mayes, the statement shows that he is owed about $180,000 by Defendant for his expenses incurred in the overall project.

**B. Dischargeability Under Sections 523(a)(2), (4), and (6)**

To the extent that Plaintiff asserts a valid claim for, at the most, $180,000 owed to him by Defendant, the Court will address below whether the claim should be nondischargeable under § 523.

**1. Section 523(a)(2)**

Plaintiff does not indicate which subparagraph he is relying on under § 523(a)(2). Section 523(a)(2)(A) of the Bankruptcy Code provides in relevant part that an individual debtor is not entitled to a discharge of a debt when any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . . (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prove actual fraud, a creditor must establish each of the following elements:

(1) [that] the debtor made the representations;

> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;
> (4) that the creditor relied on such representations; [and]
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Eashai,* 87 F.3d 1082 (9th Cir. 1996).

Under § 523(a)(2)(B) a bankruptcy court may refuse to discharge a debt if the debtor obtained the loan by "use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B). The Ninth Circuit has restated the elements of § 523(a)(2)(B) as seven factors: "(1) a representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditors reliance was reasonable, [and] (7) that damage proximately resulted from the representation." *Candland v. Insurance Co. of N. America (In re Candland),* 90 F.3d 1466, 1469 (9th Cir. 1996). The creditor must prove these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991).

At trial, the Court questioned whether Plaintiff was stating a claim under (a)(2)(A) or (a)(2)(B). The Court indicated to Plaintiff that it appeared that he was asserting that there was simply a statement made by Defendant that Plaintiff relied upon as opposed to a false financial statement that induced him to make a loan. In response to the Court's inquiry Plaintiff referred to Exhibit No. 8. Exhibit 8 includes a copy of what Defendant attested to at trial as a hand-written agreement that resulted from a meeting with Derek Smith on May 9, 2006, where Mr. Smith indicated that he no longer wanted to be a part of R & D and would give up his ownership either on May 9, 2006, for $30,000 or for $50,000 that would be paid over a time to be determined.

The Court finds that Exhibit 8 does not support a § 523(a)(2)(B) claim. Plaintiff had already extended at least $30,000 worth of services to R & D at the time Mr. Smith and Defendant signed the document. The agreement does not, *per se*, set forth a false financial statement that Plaintiff relied upon to incur debt to provide the necessary services to complete the tenants improvement for

R & D.

As for a claim under § 523(a)(2)(A), Plaintiff must prove that Defendant made representations of fact that he knew were false, that he made them with the intention and purpose of deceiving Plaintiff, that Plaintiff relied on such representations, and that Plaintiff sustained the alleged loss and damage as the proximate result of the representations having been made.

Other than general accusations, Plaintiff has provided no evidence that would indicate Defendant represented to Plaintiff false information about the worth of his financial assets in his current business or his ability to acquire additional financial assistance with the intention of purposely deceiving Plaintiff. Defendant testified at trial that his partner Derek Smith was to infuse $75,000 into R & D for the project, and he was to provide $25,000 along with the existing business. Defendant also stated he realized that $75,000 was not enough to build out the project at the time he first met with Plaintiff. Defendant also testified that at the time he wrote a check to seanmark there was sufficient funds in the R & D checking account and unbeknown to him Mr. Smith had removed the funds from the account.

The Court further noted during trial that Plaintiff was very much aware of the financial status of R & D once the check for $30,000 in partial payment of seanmark's services, was returned to Plaintiff for insufficient funds, yet Plaintiff continued to proceed with the project, using his own funds and entering into a loan with Mr. Mayes. Plaintiff is not able to claim that he relied on any statements by Defendant of his financial stability after the check for insufficient funds was returned to Plaintiff.

The Court finds no facts to support that Defendant made representations of fact that he knew were false with the intention of purposely deceiving Plaintiff and no basis to support a claim under § 523(a)(2)(A).

**2. Section 523(a)(4)**

Plaintiffs' second ground for finding the debt nondischargeable is § 523 (a)(4), which requires a finding that the debt was incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Defalcation while acting in a fiduciary capacity further requires proof of an actual trust, rather than a resulting or constructive trust. *See In re Schneider,*

99 B.R. 974 (9th Cir. BAP 1989) (stating that "[t]he intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust."). The term "fiduciary" is given a very narrow definition under § 523(a)(4). *Id.* at 977.

At trial, the Court instructed Plaintiff that examples of a fiduciary relationship would be a holder of a trust account or a general partner who absconds with funds of a business. In an attempt to establish that Defendant was acting in a fiduciary capacity, Plaintiff asserted at trial that Defendant wrote checks in the business for his personal use and that he purchased Mr. Smith's portion of the business with funds that were to be used for construction. Plaintiff further asserted that Defendant took actions to perpetuate the debt, to destroy the viability of the business, and then to file bankruptcy without reason.

The Court finds that Plaintiff fails to establish that Defendant was acting in a fiduciary capacity and therefore fails to state a claim under § 523(a)(4). Defendant's relationship with Plaintiff was no more than contractual.

### 3. Section 523(a)(6)

In *Kawaauha v. Geiger,* 523 U.S. 57 (1998), the United States Supreme Court clarified that the § 523(a)(6) exception requires that a debtor must intend to cause an injury and debts "arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. In *Geiger*, the Court also stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 61; *See Petralia v. Jercich* ( *In re Jercich*), 238 F.3d 1202, 1207 (9th Cir.), *cert. denied,* 533 U.S. 930 (2001) (relying on *Geiger,* stating that "it must be shown not only that the debtor *acted* willfully, but also that the debtor inflicted the *injury* willfully and maliciously rather than recklessly or negligently" (emphasis in original); *see also Spokane Ry. Credit Union v. Endicott* ( *In re Endicott*), 254 B.R. 471, 475 (Bankr. D. Idaho 2000) (construing *Geiger* to hold that in order to except a debt from discharge under § 523(a)(6), "a debtor [must have] commit[ted] more than a reckless or negligent act"); *Branch Banking and Trust Co. v. Powers* ( *In re Powers*), 227 B.R. 73, 75 (Bankr. E.D. Va.1998) (holding that after *Geiger,* the exception to dischargeability under § 523(a)(6) is "limited to

intentional torts"); *Avco Fin. Servs. v. Kidd ( In re Kidd),* 219 B.R. 278, 283-84) (Bankr. D. Mont.1998) ("In [*Geiger*], the Supreme Court held that the § 523(a)(6) 'willful and malicious injury' exception to discharge is limited to intentional torts and does not encompass mere negligent or reckless acts.").

The question is one of deliberate and willful intent. At trial, the Court informed Plaintiff that Defendant must have filed bankruptcy without justification and out of spite to hurt Plaintiff rather than to deal with his financial situations. Plaintiff stated in response to the Court that Defendant did file the bankruptcy out of spite to hurt Plaintiff. Plaintiff asserted specifically that Defendant wasn't forced to make payments, that he had no obligations with respect to the bar and grill, and that he was living with his wife.

During examination at trial, Defendant testified that he filed bankruptcy to clear his debts. Defendant, as noted above, was not aware that there was any potential sale to a third party. Plaintiff also provided evidence that Defendant attempted to seek investors to buy out Hair Brain Ideas LLC and cover the outstanding debts owed. Defendant testified that he did not agree, however, with the amount provided by Plaintiff.

The Court finds that the record is devoid of any evidence of intent to harm Plaintiff. Plaintiff provides no evidence that Defendant's bankruptcy filing was not for the purpose of clearing his debts. Plaintiff's claims of intent fail to show deliberate, willful acts by Defendant in filing his bankruptcy petition.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Court denies Plaintiff's Complaint objecting to Defendant's discharge of the alleged outstanding debt owed to seanmark development and grants Defendant's Motion for Judgment as a Matter of Law. Defendant's

counsel is to submit a form of judgment.

So ordered.

DATED: January 22, 2008

_____
CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE

**COPIES** of the foregoing mailed by the BNC and/or sent by auto-generated mail to:

**HENRY MANNING**
29003 N 48TH CT
CAVE CREEK, AZ 85331

**GARY R. STICKELL**
ATTORNEY AT LAW, P.C.
301 E. BETHANY HOME ROAD
SUITE B100
PHOENIX, AZ 85012